No. 46,794

KENNETH R. BUTTERS, ELMA BUTTERS and CITY OF INDEPENDENCE, MISSOURI, a municipal corporation, *Appellants*, v. CONSOLIDATED TRANSFER AND WAREHOUSE COMPANY, INC., *Appellee*.

(510 P. 2d 1269)

Opinion filed June 9, 1973.

*J. D. Lysaught*, of Weeks, Thomas, Lysaught, Bingham & Johnston, Chartered, of Kansas City, argued the cause, and *Thomas D. Cochran*, of Independence, Missouri, was with him on the brief for appellants.

*N. Jack Brown*, of Boddington, Brown & Unverferth, of Kansas City, argued the cause, and *Roy A. Larson, Jr.*, of Sprinkle, Carter, Lawson & Hanna, of Kansas City, Missouri, was with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from a summary judgment denying relief under a "hold harmless" agreement.

The city of Independence, Missouri, owns and operates a power and light department as a public utility engaged in the proprietary function of purchasing electric power for distribution to customers. In connection therewith it owned, controlled, and operated an electric transformer substation located at 34th Street and Kiger Road.

On or about July 12, 1968, Consolidated Transfer and Ware-

house Company, Inc. (Consolidated) was performing heavy hauling work for the city of Independence (city), and was specifically engaged in delivering a large electric transformer to the substation mentioned. The contract governing the performance of the work provided, in part:

"The Contractor agrees to hold the City harmless from any and all claims or liability for bodily injury, death and property damage to Contractor, his employees, agents, servants, and third parties, while engaged in the performance of this contract.

"The Contractor shall carry Workmen's Compensation Insurance during the performance of this contract, all in accordance with the laws of the State of Missouri and further agrees to carry Employer's Liability and Public Liability Insurance in the amount of $1,500,000.00 combined single limit for any one occurrence."

John Jamieson, an engineer for the city of the last eight years, including the time covered by the accident in question, was familiar with the National Electric Safety Code followed as a rule book or guide by the city employees. These safety standards required that unqualified workmen and visitors, unqualified employees or visitors and workmen whose employment incidentally brought them into the vicinity of electrical supply equipment to be accompanied by a qualified employee to provide suitable safeguards and instructions.

At the time of the accident in question, wherein Consolidated was attempting to deliver the transformer to the substation, the foreman in charge of the substation was Leo F. Hoyle. As foreman, Hoyle was not familiar with the safety rules or regulations with respect to the usage of a crane in or about an energized substation, although he was generally aware that unqualified persons were not to be allowed in the substation. As foreman of the substation Hoyle failed to warn any of the employees of Consolidated of the existence or the voltage of the power lines, and admitted there were no warning signs on or about the power lines. Further, Hoyle left the substation before the arrival of Consolidated's employees and took with him the only other city employee at the substation.

When the employees of Consolidated arrived with the crane and transformer at the unmanned substation they were unaware that if the boom of the power crane came closer than two and a half or three feet to the 69,000 volt conductor existing at the station in question, this would cause "arcing." While Kenneth Butters was unhooking the "whip line" it swung out away from the bumper

and as he saw the whip line coming back toward him, he grabbed it with his left hand, receiving an electrical shock injuring his body.

As a result of the injuries sustained by Kenneth, he and his wife, Elma Butters, residents of Wyandotte County, Kansas, instituted an action for damages against the city and Olinger Heavy Hauling Service (Olinger) and added Evans as an additional defendant. Thereafter, Olinger impleaded Consolidated as a third party defendant and the city made a third party claim against Consolidated, cross claiming Evans and Olinger.

Thereafter, the Butters entered into an agreement with the city, whereby the city paid the Butters the sum of $25,000 and the Butters acknowledged that they were making claim against the city, Olinger and Evans and that in the event they recovered judgments against the city, execution thereon would be limited to all proceeds, claims and rights in contract and in tort of certain specified insurance companies and written contracts of indemnity and all indemnifications, whether in contract or in tort (whether written, oral, implied or arising by operation of law) between the city and Evans, Consolidated and any subsidiary or agent except Olinger, and that the city would assign such rights of indemnity, if any, to Butters.

Kenneth, being an employee of Consolidated, had previously filed for and received workmen's compensation from Consolidated, under the laws of the State of Missouri in the amount of $40,877.43.

On January 28, 1971, the Thursday before this case was to commence trial on Monday, Butters proceeded to put on evidence in a default proceeding against the city under the agreement reached with the city hereinbefore mentioned. The attorneys for the other interested parties, having previous knowledge of the intention of Butters and his attorneys, were present at those default proceedings and attempted to participate therein in order to protect the interest of their respective clients. At that time, in order to protect the parties not allowed to participate, the Missouri court ruled that any determination in favor of the Butters and against the city would not be binding on the other parties, including Consolidated. Butters then proceeded to present evidence and argument in support of his damages in this default proceeding against the city, and at the conclusion of the trial, the court took the matter under advisement and on April 8, 1971, entered its judgment in favor of Kenneth Butters in the sum of $250,000 and in favor of Elma Butters in the sum of $50,000 and against the city.

On April 21, 1971, the city voluntarily dismissed the Missouri action as to defendants Evans and Consolidated; Olinger had previously been dismissed from the Missouri action as a result of a settlement reached with Butters.

Thereafter, pursuant to its agreement, the city assigned to the Butters its right of indemnity against Consolidated. The action which we are now considering was filed by the city and the Butters, claiming Butters to be the assignee of the city's rights against Consolidated under the indemnity agreement.

Consolidated filed motions to dismiss both as to the city and the Butters. The pleadings, transcript, and journal entry in the Missouri default proceedings were submitted to the district court. The district court treated the motions to dismiss as motions for summary judgment. Without setting out all the grounds for dismissal, it will suffice to say that the district court found the actions were barred by the Workmen's Compensation Act and the Statute of Limitations, and further found:

"The case brought by Mr. and Mrs. Butters in the Circuit Court of Jackson County, Missouri, for Mr. Butters' injuries is against the City of Independence and Olinger Heavy Hauling Service, and in the petition it is alleged that Mr. Butters' injuries were caused by the negligence of those defendants. It seems to me that inherent in Judge Jensen's judgment for Butters against the City is a finding that the City was, in fact, negligent. Indemnity is generally allowed in favor of one who is held responsible solely by imputation of law because of his relation to the actual wrongdoer. The duty to indemnify does not extend to a judgment based on the negligence of the party claiming the right of indemnification, which is the situation we have here. The law is that there is no right of indemnification between persons in pari delicto. The contract between Butters and the City recites that Butters' claim against the City is based on the City's failure to supervise Olinger and Evans."

The appellants challenge the conclusions of the district court.

We first consider the district court's conclusion that the indemnity agreement could not be enforced because of the negligence of the city. Inherent in this proposition are two questions:

1. Was the liability of the city to the Butters founded on negligence?

2. If the first question is answered in the affirmative, did the indemnity agreement cover the city's liability for its own negligence?

We are forced to conclude that the Butters' claim against the city was based on the negligence of the city.

We quote in part from the allegations of the petition in *Butters v.*

*City of Independence Missouri and Olinger Heavy Hauling Service,* in which the default judgment was obtained:

"6. Plaintiff's injuries were caused by the negligence of defendants and each of them and by their agents, servants and employees in the following respects:

"(*a*) Directing the crane operator to raise the boom of the crane into the 69,000 volt transmission wire;

(*b*) Failing to de-energize the sub-station and particularly the 69,000 volt wire before work commenced;

(*c*) Failing to warn of the presence of electricity in the aforesaid 69,000 volt wire;

(*d*) Causing, allowing and permitting the crane to be operated in close proximity to the said wire;

(*e*) Failing to adequately supervise, inspect and direct the operations of the aforesaid crane and in failing to have an electrical engineer or other qualified personnel at the scene during the ultra-hazardous operation to avoid contact with the wire;

(*f*) Failing to warn the plaintiff of the proximity of the 69,000 volt wire to the crane boom after defendants knew or reasonably should have known that contact between them was imminent and death or serious personal injury would result to those in close proximity to the crane and particularly this plaintiff.

"7. As the direct and proximate result of the aforesaid negligence of defendants, plaintiff sustained the following permanent and progressive injuries:"

In *Loan Co. v. Marks,* 59 Kan. 230, 52 Pac. 449, we held:

"The truth of the plaintiff's petition is admitted by the default of a defendant duly served, and he may not in a subsequent action, relating to the same subject-matter, between the same parties or their privies, assert the falsity of the matters so admitted." (Syl. ¶ 2.)

The transcript of proceedings in the Missouri action contained the following:

"MR. RISJORD: [Counsel for Kenneth R. and Elma Butters]: I might say in explanation, our theories of liability are two; first, that the City is liable because their contractors, Consolidated, chose the wrong method, an unsafe method, under the circumstances, of delivering this transformer, namely by the use of a mobile crane when a much safer method could have been followed —and, in fact, was followed after this accident."

. . . . . . . . . . . . .

"And, secondly, that the City was negligent in these circumstances because the contractor, Evans Electric, had an employee who they furnished to the City who was the substation foreman who unlocked the gate to the substation, was required by all standard safety procedures to remain and keep unqualified people out of trouble with live parts, and walked off, left the scene, was not present at the time of the accident. And that therefore, the City was negligent in this respect."

The following is also found in the stipulated record on appeal:

. "Leo F. Hoyle testified by way of deposition read into evidence in the Missouri action:

"I am a substation foreman for all substations of the Power and Light Department of the City of Independence, Missouri. The substation at 35th and Kiger Road is designated Substation 'I'."

At the time of Butters' injury, Hoyle was substation foreman for I substation for the Power and Light Department of the city, although he stated he was actually employed by Evans Electric. After October 5, 1969, he has been working directly for the city, receiving his wages directly from the city. He testified that "we" were building an addition to the existing substation by adding a transformer to double the capacity of the substation, but that at the time of the accident, there was no one present at the substation who was employed either by Evans Electric or the city. That as foreman of the substation, Hoyle failed to point out to the employees of Consolidated the existence or the voltage of the power lines over the driveway and admitted there were no warning signs on the line or on the pole. He stated he was not familiar with one single safety rule or regulation with respect to the usage of a crane in or about an energized substation. Hoyle further testified there was a rule or regulation to the effect that unqualified persons were not to be allowed into the substation. He further stated that when he left the substation, before the arrival of Consolidated's employees, he took with him the only other city employee at the substation.

Inter-departmental correspondence of the city to its employees concerning substation procedure, admitted in evidence in the Missouri action, is summarized as follows: That to protect its employees and outside contractors from serious accidents in substations, those contractors and employees who were not familiar with substation equipment would not be allowed to enter a substation without having been notified by the substation crew foreman, and that the substation foreman would provide an employee to be present while the outside contractor or employee were completing their work.

We are of the opinion the agreement for indemnification does not include the duty to indemnify against the city's own negligence.

It would appear that an overwhelming majority of jurisdictions adhere to the general rule requiring an unequivocal expression of intent before allowing indemnity for the indemnitee's own negli-

gence. In 41 Am. Jur. 2d, Indemnity, Sec. 15, p. 699, the rule is stated:

"A contract of indemnity purporting or claimed to relieve one from the consequences of his failure to exercise ordinary care must be strictly construed. Accordingly, it is freqently stated as the general rule that a contract of indemnity will not be construed to indemnify the indemnitee against losses resulting from his own negligent acts unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it. Mere general, broad, and seemingly all-inclusive language in the indemnifying agreement has been said not to be sufficient to impose liability for the indemnitee's own negligence. It has been so held, for instance, with regard to the words 'any and all liability.' It has been said that the general rule is not necessarily designed to frustrate coverage of the indemnity clause as against losses partially attributable to negligence of the indemnitee; rather, the rule is commonly stated in support of conclusions against coverage in cases where the precise nature of the relationship between the indemnitee's neglignce and the particular loss or claim is such as to negate any intent that the parties designed to cover it by their agreement of indemnification. Public policy has been said to require such contracts to be restricted rather than extended, and the liability of the indemnitor is regarded as so hazardous, and the character of the indemnity so unusual, that there can be no presumption that the indemnitor intended to assume it in the absence of express stipulation. But where the language clearly indicates the intention of the parties that the agreement shall include negligence, the courts will give effect to such intention despite their inclination to construe the agreement strictly against the indemnitee." (pp. 699-701.)

The law of Missouri which would appear to govern this controversy follows the same general rule. In *Kansas City Power & Light Co. v. Federal Const. Corp.*, 351 S. W. 2d 741, the rule of the Missouri Supreme Court is announced in headnotes 2, 3 and 4, as follows:

"Language that is merely general, broad, and all-inclusive in indemnity agreement is not sufficient to impose liability for indemnitee's own negligence.

"Under indemnity provisions of construction contract calling for contractor to hold power company harmless from judgments arising out of acts of contractor's servants, power company was not entitled to indemnity from contractor for sums paid in settlement of suits instituted against power company by contractor's workmen who were injured through power company's own negligence.

"Construction contract with power company requiring that contractor assure its undertaking to indemnify power company from all loss resulting from or arising out of acts of contractor by taking out liability insurance, did not indicate an intent to place all risk of major loss, even that attributable to power company's own negligence, upon contractor."

This court does not appear to have had occasion to pass on a "hold harmless" agreement such as the one before us. However,

the federal courts follow the general rule announced. (*Brogdon v. Southern Railway Company*, 384 F. 2d 220.)

The indemnity or "hold harmless" agreement does not show an intention to indemnify the indemnitee against loss resulting from its own negligent acts expressed in clear and unequivocal terms, or even necessarily indicate it.

What has been said disposes of this controversy and the other questions do not require consideration.

The judgment is affirmed.

FROMME, J., not participating.