No. 47,868

Louis Bartlett, Father, and Heir at Law, of Dean L. Bartlett, Deceased, et al., *Plaintiffs*, v. Davis Corporation, *Appellant*, and Marinus Heersche, d/b/a Wichita Big River Sand Company, *Appellee*, v. Iowa Mutual Insurance Company of De-Witt, Iowa, a Corporation, R. C. Sudgen, Sudgen Insurance Agency, Inc., and Insurance Services of Kansas, Inc., *Appellees*.

(547 P. 2d 800)

Opinion filed March 6, 1976.

*Fred A. Beaty,* of Wichita, argued the cause and was on the brief for the appellant.

*Richard C. Hite,* of Wichita, argued the cause and was on the brief for R. C. Sugden, Sugden Insurance Agency, and Insurance Services of Kansas, Inc., appellees.

*H. E. Jones,* of Wichita, argued the cause and was on the brief for Iowa Mutual Insurance Company, of DeWitt, Iowa, appellee.

*George D. McCarthy,* of Wichita, was on the brief for Marinus Heersche, appellee.

The opinion of the court was delivered by

KAUL, J.: This is an action for indemnity arising from a judgment for damages for the wrongful death of plaintiffs' decedents, two young boys who drowned in a sand and gravel pit owned by appellant Davis Corporation (hereafter referred to as Davis) and operated by Marinus Heersche, d/b/a Wichita Big River Sand Company (hereafter referred to as Heersche). The wrongful death judgment against Davis and Heersche was affirmed by this court in *Bartlett v. Heersche,* 204 Kan. 392, 462 P. 2d 763, which will be referred to as the *Bartlett* case. Encompassed in the *Bartlett* appeal was an appeal by Davis from a trial court ruling dismissing its cross petition against Heersche for indemnity. After judgment was entered in the *Bartlett* case, Heersche filed a third party complaint bringing in his insurer, the Iowa Mutual Insurance Company of DeWitt, Iowa, and also Iowa's general insurance agents in Kansas— R. C. Sugden, Sugden Insurance Agency, Inc., and Insurance Services of Kansas, Inc.

In the *Bartlett* appeal, in addition to affirming the wrongful death judgments against Davis and Heersche, this court reversed the trial court's ruling dismissing Davis's cross claim for indemnity against Heersche. Thereafter the indemnity question framed by Davis's cross petition was presented to the trial court which ultimately determined that Davis was not entitled to indemnity. Davis has appealed from that ruling.

The background facts are recited in detail in the *Bartlett* opinion and need not be repeated except for those matters directly related to the issues presented in this appeal.

The paramount issue before us in the *Bartlett* appeal was whether the trial court erred in failing to find that an attractive nuisance did not exist as a matter of law. In our opinion in *Bartlett* the trial evidence was considered and cases of this court dealing with

the application of the attractive nuisance doctrine were reviewed. The gist of our decision was expressed in these words:

"In the instant case sufficient evidence was presented to sustain a finding by the jury that an attractive nuisance existed on the appellant's premises, and by reason thereof the appellants were obligated to exercise ordinary care in maintaining a fence required by the ordinance. Once it is established that an attractive nuisance exists to the satisfaction of the jury, simple negligence on the part of the appellants in failing to maintain an adequate fence as required by the ordinance would be sufficient to impose liability upon both the *operator* of the premises and the *owner* of the premises by virtue of the specific provisions of the ordinance." (p. 399.)

The ordinance referred to was Wichita Ordinance No. 27-273, which provides in substance that it is unlawful to operate or maintain a sand or gravel pit within the city unless certain conditions of public protection were established and maintained. Included in the conditions specified was a good and sufficient fence constructed as specified by the ordinance and completely enclosing the sand or gravel pit. The ordinance specifies a V-mesh wire or chain link fence fifty-eight inches high or forty-two to forty-eight inches in height, with two or more strands of barbed wire. The evidence disclosed a V-mesh wire fence had been constructed, but had been "mashed down" at one point so that it could be stepped over and at another point had been cut leaving an opening approximately twelve feet wide.

On March 1, 1964, Davis and Heersche executed an agreement entitled "Grant of Right to Remove Sand and Gravel." The agreement gave Heersche the exclusive right to enter upon and occupy the premises for the purposes of removing sand and gravel for a period of two years and further provided that any holding over after the expiration of the agreement would be on a month-to-month basis. Heersche agreed to perform at his sole cost all labor necessary and to provide the proper and necessary equipment for the removal of sand and gravel. Section five of the contract is in the form of a "hold harmless" agreement the interpretation of which is the central issue in this appeal.

In its cross petition against Heersche, Davis alleged that by reason of the agreement, defendant Heersche "agreed to indemnify and save harmless Davis Corporation from all claims, liabilities and obligations by reason of Heersche's operation on and occupancy of the premises herein involved" and that in the event a judgment is entered against it, Davis is entitled in that amount from defendant Heersche.

The cause presented by the cross petition was tried commencing on March 15, 1971. Pretrial orders and the transcript of the original trial were offered in evidence. Lawrence R. Davis, an officer of Davis, testified that as a result of the judgment in the *Bartlett* case he had paid into court the sum of $29,538.63, which was equal to one-half of the total *Bartlett* judgment, and that the money used was a loan from Home Insurance Company to be repaid to the extent Davis recovered from Heersche in the action being tried. Lawrence Davis further testified that when the ordinance requiring sand and gravel pits to be fenced was passed there was a conversation among himself, his father and Mr. Heersche and that a decision was made to comply with the ordinance; that Davis would purchase material for the fence and Heersche would install it and maintain it on a continuous basis. As we have noted, a V-shaped mesh wire fence was constructed, but had been mashed down at one point and cut at another. The record does not disclose when or by whom the fence was constructed.

Heersche offered no evidence in the trial on the cross petition, but rested his case upon the completion of Davis's evidence. At this point Davis moved for a directed verdict. The trial court sustained the motion of Davis stating:

"This is a contract case and the issues boil down to whether or not there is an indemnity only if liability or obligation results from the negligence of Heersche, or whether or not indemnity results merely by reason of the fact that a liability or obligation results from Heersche's operation and occupancy of the premises in question. The contract does not limit indemnity to negligence on the part of Heersche, but calls for indemnity upon the event of any liabilities which might occur on the premises by reason of the fact that it is occupied, operated by the defendant Heersche.

"The plaintiffs (defendant Davis Corporation's) motion for judgment is sustained."

At this point, the trial court severed Heersche's third party petition against his insurer and agent from the cross petition indemnity trial and directed that the judgment entered in the cross petition trial would not be effective until the conclusion of the litigation on the third party petition.

Thereafter, Heersche filed a motion for a new trial or in the alternative for alteration of the judgment. After hearing arguments on October 4, 1971, the court overruled the motion of Heersche in toto and entered judgment for Davis in the amount of $29,538.63 with interest and costs.

Thereafter, on July 17, 1973, Heersche, Iowa Mutual and Sugden

filed an amended motion for revision of judgment, alleging that because of this court's decision in *Butters v. Consolidated Transfer & Warehouse Co., Inc.*, 212 Kan. 284, 510 P. 2d 1269, filed on June 9, 1973, the judgment of the trial court entered on October 4, 1971, was erroneous and should be vacated and set aside. On December 28, 1973, the trial court sustained this last motion, vacated its former judgment, and entered final judgment for Heersche. Thereafter Davis perfected this appeal. Although Heersche and his insurer, Iowa Mutual and its agency, Sugden, are adversaries in their third party action, they stand united in their position opposing indemnification of Davis which is the subject of this appeal.

In its first point on appeal Davis strenuously argues that the trial court failed to follow the law of the case which it says was established in the *Bartlett* opinion. The essence of Davis's argument is that this court's reversal of the trial court's ruling dismissing Davis's cross petition for indemnity was a complete and final judgment determining that Davis was entitled to indemnification from Heersche. Davis says the decision to that effect became the settled law of the case and was binding on the trial court. Davis misconstrues the effect of our decision with respect to the indemnity claim raised by the cross petition. We noted in the *Bartlett* opinion that the trial court sustained the motion to dismiss the cross petition without giving any reasons, citing as its authority K. S. A. 60-214 (*a*), [now 1975 Supp.]; and *Alseike v. Miller*, 196 Kan. 547, 412 P. 2d 1007. Concerning the cross petition we said:

"The cross petition of the Davis Corporation was a cross-claim against a co-party defendant pursuant to a *contract* of indemnity and did not involve the third party practice contemplated by K. S. A. 60-214 (*a*) which was the subject of controversy in the *Alseike* case. (See, also, *Russell v. Community Hospital Association, Inc.*, 199 Kan. 251, 428 P. 2d 783, which adhered to the *Alseike* case.)" (p. 406.)

We proceeded to say that after judgment the status of Davis and Heersche was that of joint tort-feasors, but as between them the liability was controlled by a contract of indemnity. We further said:

"Under these circumstances the Davis Corporation was entitled to cross-claim against Heersche as a co-party defendant pursuant to K. S. A. 60-213 (*g*). (See 1A Barron and Holtzoff, Federal Practice and Procedure, § 397, p. 598; and Gard, Kansas Code of Civil Procedure Annotated, § 60-213 [g], p. 70.) The situation here presented was specifically excepted from the ruling in the *Alseike* and *Russell* cases." (p. 406.)

Our decision, on the indemnity issue, merely held that the trial court erred in dismissing the cross petition on the third party joint

tort-feasor theory of the *Alseike* case when the relationship between Davis and Heersche was contractual. We did not construe the indemnity provision of the contract, nor did we direct a judgment to be entered on the issue. In other words, we make no decision on liability under the indemnity provision which could have become the settled law of the case.

It is true, of course, that when a second appeal in the same action is brought to this court, the first decision is the law of the case on all questions involved and decided in the first appeal and such questions will not be reconsidered. However, when this court, upon appeal, merely reverses a district court on its ruling in connection with a motion to dismiss or for summary judgment, and no judgment is directed, the effect of the ruling by this court is the same for the purpose of further proceedings in the district court, as if the district court had made the correct ruling in the first instance, except, of course, that the district court has no authority to change or modify the ruling made by this court. (*Waddell v. Woods,* 160 Kan. 481, 163 P. 2d 348.) Relating to the posture of the case at bar, this pertinent statement appears in the *Waddell* opinion:

". . . It is possible, of course, that a decision by this court in sustaining a demurrer to a pleading may be of such a nature as to make the rule of *res judicata* applicable in such a manner that amended pleadings could not thereafter be filed properly in the district court but it certainly does not follow that such a consequence must always occur. In support of their contentions to such effect counsel for the plaintiff cite (citations omitted). Such cases are in point and are controlling insofar as they are applicable to the new allegations of negligence in the second amended petition. A different result occurs where a final judgment has been rendered on the merits but we do not have such a case before us. . . ." (p. 484.)

Since we did not direct judgment on the indemnity issue and actually decided the point on the basis that the trial court erred in finding impermissible third party practice under *Alseike,* our decision cannot be considered res judicata. The district court apparently did not consider the indemnity issue on the merits. Nevertheless, we did say, as Davis points out, what the clear meaning of the contract appeared to be:

"In the contract the Davis Corporation was entitled to indemnity from Heersche by virtue of an indemnity provision in the grant to remove sand and gravel in his operations on and occupancy of the premises. Heersche also contracted to keep the premises and operations insured within minimum limits of $25,000, the Davis Corporation to be carried as named insured. *Heersche also agreed to comply with all laws and regulations of any municipal or governmental body that may affect his operations on the premises, violation of which*

*would render Heersche liable to the Davis Corporation for any judgment obtained against the Davis Corporation for violation of a municipal law."* (pp. 404, 405.) (Emphasis supplied.)

We have reexamined the indemnity provision in the light of our decision in *Butters v. Consolidated Transfer & Warehouse Co., Inc.,* supra, and have concluded that the provision clearly expresses the rights of the parties as first delineated in the *Bartlett* opinion even though our statement there was not a final determination of the issue.

Notwithstanding what was said in *Bartlett,* Heersche insists that our opinion in *Butters* compels application of the general rule barring indemnification for loss occasioned by the indemnitee's own negligence unless an intention to indemnify is expressed in clear and unequivocal terms. In *Butters* the general rule was considered for the first time in this jurisdiction and was adopted and applied so as to bar indemnification under the "hold harmless" agreement before us in that case. A careful analysis of the *Butters* decision, however, indicates that it is not controlling here.

In the *Butters* case, Kenneth Butters was injured by electrical shock while operating a power crane for his employer Consolidated who had contracted with the City of Independence, Missouri for the transportation of a large electric transformer to a substation of the city's electric power system. Hoyle, a city employee, was the foreman in charge of the substation. He was not familiar with safety rules and regulations with respect to usage of a crane in or about an energized substation and, moreover, he left the substation before Butters and other Consolidated employees arrived with the crane and transformer. Hoyle took the only other city employee with him so, at the time the crane and transformer arrived, the substation was unmanned by any city employee. The record also disclosed that no warning signs were posted at the substation as required by safety regulations. Butters, who was unaware of the danger, unhooked a "whip line" attached to the boom of the crane when it was in close proximity to 69,000 volt conductor; the electricity "arced" to the "whip line" resulting in the serious injuries suffered by Butters.

An action was first filed in Missouri against the City of Independence and other defendants. The city filed a third party indemnification claim against Consolidated. Butters and city reached an agreement whereby city permitted Butters to take a default

judgment in the Missouri case and was then assigned city's indemnification rights against Consolidated.

Butters, a Kansas resident as assignee of city, joined with city as plaintiffs and the present action was filed in Wyandotte district court, seeking indemnification from Consolidated based on the original contract between city and Consolidated. The district court found that the *Butters* judgment against the city rendered by the Missouri court was based on the negligence of city and, thus, city was not entitled to indemnification under the general rule. We affirmed, noting the particular acts of negligence on the part of city which we have heretofore sent out. We examined the indemnification provision of the city-Consolidated contract and held that it did not show an intention, expressed in clear and unequivocal terms, to indemnify the city against loss resulting from its own negligent acts. We quoted with approval the general rule and guidelines for the application thereof set out in 41 Am. Jur. 2d, Indemnity, § 15, p. 699.

The "hold harmless" agreement between city and Consolidated is set out in the *Butters* opinion. It reads:

" 'The Contractor agrees to hold the City harmless from any and all claims or liability for bodily injury, death and property damage to Contractor, his employees, agents, servants, and third parties, while engaged in the performance of this contract.' " (p. 285.)

Section No. 5 of the Davis-Heersche agreement reads:

"Heersche agrees to conduct his operations on the above described property in a proper and careful manner, and agrees to indemnify and save harmless Davis from all claims, liabilities and obligations by reason of Heersche's operations on and occupancy of said premises; Heersche shall not excavate or dig pits or maintain operations within 15 feet of the lines of the property above described; no soil or fill material shall be stripped or removed from the premises without the express written consent of the Davis Corporation, its successor or assigns; Heersche will at all times during the term of this agreement comply with all laws and regulations of any municipal or governmental body that may affect his operations on said premises, and at all times during the term of this agreement will, at his cost, keep said premises and his operations insured, with minimum limits of $25,000.00, Davis to be carried as a named insured, and furnish copies of said policies or certificates of insurance to Davis."

It is readily seen that the obligation of the Davis-Heersche agreement goes far beyond that expressed in the city-Consolidated contract.

Before further comparison of the two indemnity provisions we should further examine the Davis-Heersche agreement. In this connection it is stated in 41 Am. Jur. 2d, Indemnity, § 13:

"A contract of indemnity is construed in accordance with the rules for the construction of contracts generally. The cardinal rule is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. To do this, it has been held that the courts must consider not only the language of the contract, but the facts and surrounding circumstances under which the contract was made. . . ." (p. 697.)

Under the provisions of the contract Heersche was granted the exclusive right to enter and occupy the premises for the purposes of removing sand and gravel as Heersche saw fit. In section No. 2 Heersche agreed to perform, at his sole cost, all labor necessary and to provide the proper and necessary equipment for the removal of sand and gravel and to pay Davis at the rate of five cents per ton. As lessor of the premises, Davis retained only a royalty interest in the sand and gravel removed and gave to Heersche exclusive right to enter and occupy. Davis was not carrying on any independent operations on the premises. The contract expressly required Heersche to conduct operations in a proper and careful manner and to comply "with all laws and regulations of any municipal or governmental body that may affect his operations on said premises." Heersche was also required to carry insurance naming Davis as the insured. Under such an arrangement, Davis could become liable for Heersche's operations and occupancy of the premises only because of duties devolving upon it as owner of the land and as between the contracting parties, it was Heersche's primary responsibility to see to it that such duties were fully discharged. If the contract did not afford indemnity in the precise situation existing in this case, it is difficult to contemplate what indemnity was intended by the parties. Although the contract does not expressly state in so many words that indemnity would lie for loss occasioned partially from Davis's own negligent violations of duties imposed by law, it would seem to "necessarily indicate it" as those words were used in *Butters,* wherein Mr. Chief Justice Fatzer speaking for the court said of the *Butters* contract:

"The indemnity or 'hold harmless' agreement does not show an intention to indemnify the indemnitee against loss resulting from its own negligent acts expressed in clear and unequivocal terms, or even *necessarily indicate it.*" (p. 291.) (Emphasis supplied.)

As distinguished from the use and occupancy contract in the instant case, the contract in *Butters* was for delivery of the large transformer to city's substation. The city was in exclusive control of the substation and solely responsible for the supervision thereof. It was the sole obligation of city to meet and maintain safety

regulations and requirements pertaining to an energized substation. These were matters over which Consolidated had no control whatsoever. To impose indemnification on Consolidated under such circumstances would be to burden the indemnitor with liability, the extent of which would be uncertain, indefinite and entirely in the hands of indemnitee. (See *Cozzi v. Owens Corning Fiber Glass Corp.*, 63 N. J. Super. 117, 164 A. 2d 69.) It can hardly be contended in the case at bar that the injuries arose out of circumstances or acts entirely beyond Heersche's control when he, by the terms of the contract, assumed the primary responsibility to provide full compliance with all safety ordinances and laws regulating the sand pit. His obligation included maintenance of a mesh wire fence and his failure to discharge it was nonperformance of a contractual duty constituting a breach of contract. Even though Davis, as owner, had responsibility under the ordinance, it seems to us that the intent to idemnify for loss occasioned by failure to maintain the fence is clearly evident from the terms of the contract.

Particularly applicable to the facts of the instant case is a statement included in the quote from 41 Am. Jur. 2d, Indemnity, § 15, appearing in the *Butters* opinion:

" '. . . [T]he general rule is not necessarily designed to frustrate coverage of the indemnity clause as against losses partially attributable to negligence of the indemnitee; rather, the rule is commonly stated in support of conclusions against coverage in cases where the precise nature of the relationship between the indemnitee's negligence and the particular loss or claim is such as to negate any intent that the parties designed to cover it by their agreement of indemnification. . . .' " (p. 290.)

In the case at bar there is nothing shown pertaining to the relationship of Davis, as owner, to a loss occasioned by failure to maintain the fence which might be said to negate intention to indemnify under the terms of the agreement.

The agreement did not contemplate independent operations by Davis on the premises, thus, an express indemnification for affirmative acts of negligence of Davis was understandably, not written into the contract. Although recognizing the general rule, a great majority of courts hold that it is not necessary that the agreement contain specific or express language covering the owner's negligence, if the intention to afford such protection clearly appears from the contract, the surrounding circumstances and the purposes and objects of the parties. (See 41 Am. Jur. 2d, Indemnity, § 15, pp. 699-701; 27 A. L. R. 3d, Annotation, Indemnity-Contractor's

Liability, § 5 [*b*], p. 694, and cases cited therein.) Where the indemnitor has possession and control of the work of premises and the owner does not maintain independent operations on the premises, a contract of indemnity is generally construed to cover passive negligence of the owner. (See *St. Louis & S. Ry. Co. v. Stewart*, [1916 Mo.], 187 S. W. 836; *Harvey Mach. Co. v. Hatzel & Buehler, Inc.*, [1960], 54 Cal. 2d 445, 6 Cal. Rptr 284, 353 P. 2d 924, and other cases annotated in 27 A. L. R. 3d, Annotation, Indemnity-Contractor's Liability, § 6 [*d*], p. 701.)

An exhaustive annotation on coverage for the indemnitee's own negligence is found in 27 A. L. R. 3d, Annotation, p. 663. While the annotation primarily deals with indemnity agreements in the construction area many of the cases concern an owner-contractor relationship involving general principles of indemnity applicable to the contract herein. The author enumerates facts and circumstances considered in determining an owner's indemnity coverage in this fashion:

"Particular attendant facts or circumstances which the courts in some cases have regarded either as pertinent and relevant, or as immaterial, on the question whether the parties intended the indemnity agreement to cover the owner's negligence, have included contractual requirements for or the existence of insurance against liability, contractual liability, or other risks; other contractual stipulations or provisions; the hazardous and extraordinary nature of such an undertaking by the contractor, and the adequacy of the contractual consideration; whether it was contemplated that the contractor would be in exclusive possession or control of the work or premises, and whether the owner was to continue independent operations in the area; and the time or place of the injury as to which indemnification was sought." (p. 678.)

In *Harvey Mach. Co. v. Hatzel & Buehler, Inc.*, supra, the Supreme Court of California was confronted with an owner's claim for indemnification under a "hold harmless" indemnity agreement similar to that before us. In upholding the owner's right to indemnification the court said:

". . . Where, as in the case at bar, the contractors had practical control of the structures on the premises, any negligence for the condition of the structures would obviously not be that of the owner alone. The accident, in these circumstances, was one of the risks, if not the most obvious risk, against which Harvey sought to be covered. . . ." (p. 448.)

The California court, as we are here, was called upon to distinguish a prior decision—*Vinnell Co. v. Pacific Elec. Ry. Co.*, 52 Cal. 2d 411, 340 P. 2d 604, in which owner's indemnification had been denied. The court noted that in *Harvey:*

". . . [T]he claimed breach of duty on the indemnitee's part was not active, affirmative misconduct, but at most passive negligence—a failure to act in fulfillment of a duty of care which devolved upon the indemnitee as the owner or occupier of land. Finally, the misconduct does not relate to some matter over which the indemnitee exercised exclusive control. . . ." (p. 448.)

The court distinguished *Harvey* from the facts in *Vinnell* where the negligent conduct was said to have been not only within the indemnitee's exclusive control, but was also an act unrelated to the indemnitor's performance. The California court concluded:

"In view of the distinctions hereinbefore drawn, the present decision is not inconsistent with the views expressed in the opinion in the Vinnell case, *supra*. As noted particularly, the conduct there involved an affirmative, unrelated act of negligence on the part of the indemnitee. It was stated therein, and the decision turned on the holding, that 'courts have consistently adopted the position that indemnification claims are to be strictly construed against the indemnitee in cases involving affirmative acts of negligence on his part. (Citations.)' Throughout the opinion, however, it is manifest that it is the intent of the parties which the court seeks to ascertain and make effective. Where, as in the present case, the circumstances of the claimed wrongful conduct dictate that damages resulting therefrom were intended to be dealt with in the agreement, there is no room for construction of the agreement. It speaks for itself." (p. 449.)

Authorities are in conflict concerning the effect of a contractual requirement that the contractor procure liability insurance in determining the intention of the parties on the question of protecting an owner against his own negligence. (See 27 A. L. R. 3d, *supra*, § 6 [a], p. 695.) The insurance requirement in the instant case, in the form stated and when read in the context of the indemnity provision, we believe supports the conclusion that the parties intended indemnification of the owner for a loss occasioned by failure to comply with the ordinance.

We conclude that the contract in the instant case, when read in its entirety, clearly and unequivocally provides for indemnification of Davis in the precise circumstances shown to exist. To hold otherwise would, as a practical matter, render the indemnity provisions of no effect at all which obviously was not the intent of the contracting parties.

The judgment is reversed and the cause remanded with directions to enter judgment for the appellant Davis Corporation on the cross petition and with further directions to proceed expeditiously in litigating the third party action between appellees which has been pending for several years.