COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-371-CV *
 
  
DELTA AIR LINES, INC.                                                          APPELLANT
  
V.
  
ARC SECURITY, INC.                                                                APPELLEE
  
  
------------
 
FROM THE 141ST DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        This 
is a suit involving the interpretation of an indemnity agreement. In four 
issues, Delta Airlines, Inc. (“Delta”) complains that the trial court erred 
in granting summary judgment for ARC Security, Inc. (“ARC”),[1] and against Delta on its contractual indemnity claims. We 
affirm.
II. Factual and Procedural Background
        On 
July 15, 1995, Randy Dalton (“Dalton”), a paraplegic, arrived at the Dallas 
Fort Worth International Airport on Delta flight 1935.  A male and a female 
attendant, alleged to possibly be ARC employees, moved him from his airplane 
seat onto an aisle chair, a type of wheelchair specifically designed to roll 
down the narrow aisle of an aircraft.  Once they were on the jetway 
adjacent to the airplane, a second male attendant also arrived, purportedly a 
Delta gate agent, and while Dalton was being transferred from his aisle chair 
into his wheelchair, he was allegedly dropped on the wheel of the wheelchair and 
injured.
        Delta 
and ARC were contractually bound by an Agreement for Skycap Services (the 
“Agreement”), whereby ARC would provide certain defined services for Delta 
at the airport, including wheelchair assistance to Delta passengers.  
ARC’s wheelchair assignment sheet indicated that “John F.” and possibly 
“Aftab” were assigned to assist someone that day on flight 1935; however, 
the assignment sheet did not identify the particular individual to be 
assisted.  On occasion, Delta also used its own employees to perform these 
services.
        As 
a result of the alleged incident, Dalton sued Delta, ARC, and two of ARC’s 
employees, John Frimpong and Aftab Munir, as well as John Doe 1, John Doe 2, and 
Jane Doe. In his Third Amended Petition, Dalton asserted that “[o]ne of the 
two attendants who boarded the aircraft [and dropped Dalton during the 
wheelchair transfer on the jetway] is believed to be either [d]efendant AFTAB 
MUNIR or [d]efendant JOHN FRIMPONG . . . . In the event neither FRIMPONG nor 
AFTAB is the male attendant in question, then JOHN DOE 1 and JANE DOE were the 
attendants in question.” As to Delta and ARC, Dalton alleged (1) negligence 
related to the wheelchair transfer, (2) breach of an implied warranty to Dalton 
that he would be transported in a reasonably safe manner, (3) responsibility for 
the negligent acts of their respective agents and employees, and (4) gross 
negligence. In its First Amended Answer and Cross-Claim for Contractual 
Indemnity, Delta pled a general denial and other defenses, and sought indemnity 
from ARC under the Agreement for any costs or expenses that Delta might be 
required to pay as a result of the suit.
        Before 
trial, Dalton nonsuited his claims against ARC after evidence revealed that the 
appearance of ARC’s employees differed from Dalton’s description of the 
persons involved in the incident. Delta’s indemnity claim against ARC was also 
severed from Dalton’s claims against Delta. Following a jury trial, the trial 
court rendered a take-nothing judgment in favor of Delta and against Dalton. 
Thereafter in the indemnity suit, Delta pursued its expenses connected with 
defending itself against Dalton’s claims. ARC filed both a traditional motion 
and a no-evidence motion for summary judgment asserting the following grounds:
   
1.Delta is only entitled to contractual indemnity in the event an “act” or 
“omission” by ARC contributed to the alleged injuries Mr. Dalton claims he 
sustained during a wheelchair transfer incident. Delta has judicially admitted 
the incident never occurred, and no evidence exists to suggest ARC was in any 
way involved. Delta is therefore estopped from seeking indemnity from ARC as a 
matter of law.
  
2.The 
express negligence doctrine adopted by Texas and Georgia requires parties 
seeking indemnity for their own negligence to clearly and conspicuously state 
that intention. The indemnity provision Delta now relies on requires the 
occurrence of an “act” or “omission” by ARC and does not specifically 
state ARC will indemnify Delta for Delta’s sole negligence. In the absence of 
a clear intent to indemnify Delta for Delta’s own negligence, the provision is 
unenforceable as a matter of law.
   
3.Delta 
has provided no evidence that ARC committed an “act” or “omission” 
sufficient to warrant application of the indemnity agreement between the 
parties. ARC is therefore entitled to a “no-evidence” summary judgment.
  
Likewise, 
Delta filed a cross-motion for summary judgment and articulated as grounds 
therefor that “the summary judgment evidence conclusively establishes ARC’s 
liability under the terms of the written agreement.” Thereafter, the trial 
court denied Delta’s motion for summary judgment and granted ARC’s motion 
for summary judgment that Delta take nothing on its indemnity claim. The trial 
court did not specify the reasons for its rulings. This appeal by Delta 
followed.
        In 
what it denominates as four issues, Delta argues that (1) the trial court erred 
in granting summary judgment to ARC, (2) because Delta raised a fact issue as to 
whether the claim against Delta arose from an act or omission of ARC, (3) 
because the Agreement’s indemnity provision met the express negligence test so 
that ARC should indemnify Delta for Delta’s sole acts or omissions, and (4) 
because Delta was not barred by judicial admission or judicial estoppel from 
asserting that the underlying claim arose from an act or omission of ARC under 
the Agreement.
III. The Allegations and the Indemnity Agreement
        A. Plaintiff’s Pleadings
        In 
its second issue, Delta posits its issue as “Did Delta present some evidence 
to establish that the claim against Delta arose in any way from any act or 
omission by ARC under the contract?” An examination of Plaintiff’s Third 
Amended Petition reveals that Dalton was unsure whose employees allegedly 
dropped him during the wheelchair transfer. As a result, he sued Delta in the 
event the individuals were Delta’s employees and ARC in the event the 
individuals were ARC’s employees; that is, Delta was sued solely for its 
alleged acts and omissions, and ARC was sued only for its alleged acts and 
omissions.
        We 
first examine the Agreement to determine whether ARC agreed to indemnify Delta 
for ARC’s acts or omissions for which Delta was sued. Paragraph eight of the 
Agreement, titled “Indemnification,” states in pertinent part as follows:
   
Contractor [ARC] shall indemnify, defend and hold harmless Delta . . . from and 
against any and all claims . . . of any kind or nature whatsoever, including, 
but not limited to, interest, court costs and attorneys fees, which in any way 
arise out of or result from any act(s) or omission(s) by Contractor . . . in the 
performance or non performance of services under this Agreement . . . . This 
section shall apply regardless of whether or not the damage, loss or injury 
complained of arises out of or relates to the negligence . . . of, or was caused 
in part by, a party indemnified hereunder. However, nothing contained in this 
section shall be construed as an indemnity by Contractor against any loss, 
liability or claim arising solely from the gross negligence or willful 
misconduct of Delta.
 
  
        In 
short form, the first sentence of the indemnification paragraph says that ARC 
will indemnify Delta against all claims against Delta that arise out of acts 
or omissions of ARC under the Agreement. However, Delta was not alleged to 
be responsible for the acts or omissions of ARC but rather for its own acts or 
omissions. Even so, if Delta could prove that, regardless of the pleadings, the 
act or omission that Dalton alleged was caused by Delta employees was actually 
caused by ARC employees, then Delta would be entitled to indemnification under 
the Agreement.
        B. Choice of Law
        Delta 
points out that paragraph 13 of the Agreement indicates that the provisions of 
the contract are to be construed under Georgia law. ARC asserts that Texas 
courts will apply Texas law in the interpretation of contractual language unless 
Delta establishes that there is a conflict between Texas and Georgia law on the 
disputed issue. See Fraud-Tech, Inc. v. Choicepoint, Inc., 102 S.W.3d 
366, 377 (Tex. App.—Fort Worth 2003, pet. denied). After analyzing a Georgia 
case that it asserts is “on point” to our discussion of the indemnity 
language in the Agreement, Delta takes the position that “even if Texas law 
should be applied, the result would be the same.” Therefore, we will analyze 
the Agreement under Texas law.
        C.     Standards 
of Review for Traditional and No-Evidence Motions for Summary Judgment
 
        When 
both parties move for summary judgment and the trial court grants one motion and 
denies the other, the reviewing court should review both parties’ summary 
judgment evidence and determine all questions presented. FM Props. Operating 
Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000). The reviewing court 
should render the judgment that the trial court should have rendered. Id.
        Texas 
Rule of Civil Procedure 166a does not prohibit a party from combining in a 
single motion a request for a traditional summary judgment with a request for a 
no-evidence summary judgment that asserts that there is “no evidence of one or 
more essential elements of a claim or defense.” Binur v. Jacobo, 135 
S.W.3d 646, 650 (Tex. 2004).
        A 
defendant is entitled to a “traditional” summary judgment if the summary 
judgment evidence establishes, as a matter of law, that at least one element of 
a plaintiff’s cause of action cannot be established. Elliott-Williams Co. 
v. Diaz, 9 S.W.3d 801, 803 (Tex. 1999). The defendant as movant must present 
summary judgment evidence that negates an element of the plaintiff’s claim. Centeq 
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). Once the defendant 
produces sufficient evidence to establish the right to summary judgment, the 
burden shifts to the plaintiff to come forward with competent controverting 
evidence raising a genuine issue of material fact with regard to the element 
challenged by the defendant. Id.
        After 
an adequate time for discovery, the party without the burden of proof may, 
without presenting evidence, also move for summary judgment on the ground that 
there is no evidence to support an essential element of the nonmovant's claim or 
defense. Tex. R. Civ. P. 166a(i). 
The “no-evidence” motion for summary judgment must specifically state the 
elements for which there is no evidence. Id.; Johnson v. Brewer & 
Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002). The trial court must grant 
the motion unless the nonmovant produces summary judgment evidence that raises a 
genuine issue of material fact. See Tex. R. Civ. P. 166a(i) & cmt.; S.W. 
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002). We review the 
evidence in the light most favorable to the party against whom the no-evidence 
summary judgment was rendered. King Ranch, Inc. v. Chapman, 118 S.W.3d 
742, 751 (Tex. 2003), cert. denied, 124 S. Ct. 2097 (2004); Johnson, 
73 S.W.3d at 197; Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000). If 
the nonmovant brings forward more than a scintilla of probative evidence that 
raises a genuine issue of material fact, then a no-evidence summary judgment is 
not proper. Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. App.—San 
Antonio 1998, pet. denied).
        Less 
than a scintilla of evidence exists when the evidence is so weak that it does 
nothing more than create a mere surmise or suspicion of a fact. Kindred v. 
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of 
evidence exists when the evidence would enable reasonable and fair-minded people 
to reach different conclusions. Ford Motor Co. v. Ridgway, 135 S.W.3d 
598, 601 (Tex. 2004); Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 
711 (Tex. 1997), cert. denied, 523 U.S. 1119 (1998). A genuine issue of 
material fact is raised by presenting evidence on which a reasonable jury could 
return a verdict in the nonmovant's favor. Moore, 981 S.W.2d at 266; see 
also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255-56, 106 S. 
Ct. 2505, 2513-14 (1986) (interpreting Fed. 
R. Civ. P. 56).
        D. Application to the Evidence
        If 
the trial court granted ARC’s summary judgment because it concluded that Delta 
had presented insufficient evidence that it was sued due to the acts or 
omissions of ARC, Delta asserts that summary judgment was improper because it 
presented more than a scintilla of evidence that it had been sued because of 
ARC’s actions through the evidence contained in the “Wheelchair Assignment 
Sheet,” wherein Delta asserts that ARC assigned “John F” and “Aftab” 
to “assist Mr. Dalton on the date in question.” This, however, is not what 
the Wheelchair Assignment Sheet states. It is evidence that John F., and 
possibly Aftab, were assigned to meet flight 1935. There is no evidence that 
they were assigned to meet Mr. Dalton. The second piece of evidence urged by 
Delta is deposition testimony that it was the normal procedure for ARC to assign 
its employees to assist wheelchair passengers. This is, of course, just 
recounting ARC’s responsibilities under the Agreement wherein they agreed to 
provide “electric cart and wheelchair assistance to Delta’s customers . . . 
.”
        Regardless 
of whether this evidence, standing alone, is more than a scintilla of evidence 
that ARC employees were involved in the particular wheelchair incident with 
Dalton, understanding that Delta employees also provided this service, ARC 
conclusively established through its own evidence and the testimony of Dalton 
that its employees were not involved. In Dalton’s disposition, he testified 
that the non-Delta individuals involved in transferring him from the aisle chair 
to the wheelchair were a male and female who were wearing “dark, kind of a 
navy blue overall-looking outfits . . . like what . . . a mechanic or something 
would wear . . . thicker, blue-dark blue coveralls.” ARC’s employees were 
dressed in dress shirts, ties, and slacks. Neither John Frimbrough nor Aftab 
Munir testified that they had any recollection of ever having assisted Dalton, 
and Dalton did not identify either of their photographs as being the male who 
assisted him into the aisle chair. Dalton further testified that the male that 
assisted him was caucasian, but neither John Frimbrough nor Aftab Munir are 
caucasian. Therefore, we conclude that ARC conclusively established that the 
individuals who allegedly dropped Dalton during the wheelchair transfer were not 
employees of ARC, and therefore, Delta could not have been sued for the actions 
of ARC. We overrule Delta’s issue number two.
        E. The Express Negligence Test
        In 
its third issue, Delta contends that it raised a material fact issue on its 
indemnity claim because the indemnity provision in the Agreement satisfied the 
express negligence test, i.e., ARC agreed to indemnify Delta for Delta’s own 
negligence. The genesis of the express negligence doctrine is Ethyl Corp. v. 
Daniel Construction Co., 725 S.W.2d 705, 708 (Tex. 1987), wherein the court 
stated that
   
[t]he express negligence doctrine provides that parties seeking to indemnify the 
indemnitee from the consequences of its own negligence must express that intent 
in specific terms. Under the doctrine of express negligence, the intent of the 
parties must be specifically stated within the four corners of the contract.
 
        In 
Adams Resources Exploration Corp. v. Resource Drilling, Inc., 761 S.W.2d 
63, 65 (Tex. App.—Houston [14th Dist.] 1988, no writ), the court noted that in 
the express negligence context, an enforceable indemnity clause must contain 
three elements: “(1) [t]he intent of the parties must be clear; (2) it must be 
set forth within the four corners of the agreement; and (3) the specific intent 
of the parties must be expressed.” Id.
        In 
its reply brief, Delta cites cases for the proposition that the indemnification 
language in the Agreement meets the requirements of express negligence. In Maxus 
Exploration Co. v. Moran Brothers, Inc., 817 S.W.2d 50, 58 (Tex. 1991), 
Diamond Shamrock agreed to indemnify Moran against claims by Diamond 
Shamrock’s employees “without limit or without regard to the cause or 
causes thereof or the negligence of any party or parties.” Id. 
(emphasis supplied). There was a corresponding reciprocal agreement by Moran. 
The court went on to hold that “the agreement unmistakably obligated Diamond 
Shamrock and Moran to indemnify one another for the other’s own negligence.” 
Id. As to Diamond Shamrock, this is clear from a reading of the 
previously quoted section of the agreement, i.e., Diamond Shamrock agreed to 
indemnify Moran regardless of the cause of the negligence of any of the parties; 
that cause obviously could include Moran itself.
        In 
Adams, the court held that the following language satisfies the express 
negligence test: “Contractor agrees to protect, defend, and indemnify, and 
save operator . . . from and against all claims, demands, and causes of action . 
. . without regard to the cause or causes thereof or the negligence of 
any party or parties . . . .” Adams Res. Exploration Corp., 761 
S.W.2d at 64 (emphasis supplied). Again, intent to indemnify the operator from 
its own negligence is obvious because the language “without regard to the 
cause or causes thereof or the negligence of any party or parties” could 
include the negligence of the operator.
        Not 
discussed by the parties, but pertinent to this issue, is B-F-W Construction 
Co. v. Garza, 748 S.W.2d 611, 613 (Tex. App.—Fort Worth 1988, no writ), in 
which this court held that the following language also meets the test: 
“Subcontractor shall fully protect, indemnify, and defend contractor . . . 
against any . . . causes of action . . . regardless of cause or of any fault 
or negligence of contractor.” Id. at 613 (emphasis supplied). We 
stated that this language meets “the express negligence test because it 
expressly states the intent of the parties that the subcontractor would 
indemnify the contractor for the contractor’s own negligence.” Id.
        F. 
Application of the Express Negligence 
Test
        Delta 
asserts that the language in the second sentence of the indemnification 
paragraph that states, “This section shall apply regardless of whether or not 
the damage, loss, or injury . . . arises out of . . . the negligence . . . of, 
or was caused in part by, a party indemnified hereunder,” meets the express 
negligence doctrine requirements. However, that language is limited by the 
contractual language of the first sentence of paragraph eight. The first 
sentence defines the indemnity obligation, and the second sentence defines its 
parameters. In short form, the first sentence of the indemnification paragraph 
says that ARC will indemnify Delta against all claims against Delta that 
arise out of acts or omissions of ARC under the Agreement.
        The 
second sentence says that this indemnification by ARC will be applicable 
notwithstanding the negligence of a party indemnified under it, which is Delta. 
In other words, ARC’s obligation to indemnify Delta if Delta is sued for 
ARC’s acts or omissions exists even if Delta is also negligent, or the 
loss was “caused in part by” Delta. However, nowhere is there language that 
directly or indirectly says that ARC will indemnify Delta if Delta is solely at 
fault, because if Delta is solely at fault, then ARC cannot be at fault and 
Delta could not be sued for ARC’s acts or omissions as required for 
indemnification in the first sentence. In other words, ARC will indemnify Delta 
if Delta is sued for ARC’s acts or omissions (the obligation found in the 
first sentence) even if Delta is also partially at fault (the parameter of the 
obligation found in the second sentence). If Delta is wholly at fault, however, 
ARC’s acts and omissions do not give rise to a claim against Delta, and no 
indemnification is required.
        As 
applied to paragraph eight of the Agreement and Plaintiff’s Third Amended 
Petition, ARC was not required to indemnify Delta for Delta’s own acts or 
omissions because this obligation arose only if Delta had been sued for ARC’s 
acts or omissions, which it was not. Accordingly, Delta’s third issue is 
overruled.
IV. Plaintiff’s Claims
        In 
its first issue, Delta asserts error by the trial court in “granting summary 
judgment in favor of ARC.” Having overruled Delta’s issues two and three 
that are dispositive of issue one, we overrule that issue also.
V. Conclusion
        Having 
overruled Delta’s first, second, and third issues, it is unnecessary to 
address issue four, and we affirm the trial court’s judgment.[2]
  
   
                                                                  BOB 
MCCOY
                                                                  JUSTICE
  
   
PANEL B:   LIVINGSTON, 
GARDNER, and MCCOY, JJ.
 
GARDNER, J. filed a concurring 
opinion.
 
DELIVERED: April 28, 2005

 
COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-371-CV
 
  
DELTA AIRLINES, INC.                                                           APPELLANT
  
V.
  
ARC SECURITY, INC.                                                                APPELLEE
 
 
------------
 
FROM THE 141ST DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
CONCURRING OPINION
 
------------
        I 
agree with the majority’s result. But I respectfully disagree with its 
interpretation of the indemnity agreement. The majority adds terms that do not 
exist on the face of the agreement, that are unnecessary to resolve this appeal, 
and that could result in unintended consequences beyond the facts of this case.
        To 
resolve this appeal, we must answer three questions: First, does the indemnity 
agreement pass the “express negligence” test; that is, is ARC ever 
obligated to indemnify Delta for Delta’s own negligence? Second, to what 
extent is ARC obligated to indemnify Delta for Delta’s own negligence? And 
third, do the facts presented trigger ARC’s contractual obligation to 
indemnify Delta? To answer these questions, I first look to the plain language 
of the indemnity agreement. The indemnity agreement consists of two sentences:
   
[ARC] shall indemnify . . . Delta . . . from . . . all claims . . . which in any 
way arise out of or result from any act(s) or omission(s) by [ARC] . . . in the 
performance or nonperformance of services under this Agreement . . . .
  
This 
section shall apply regardless of whether or not the damage, loss or injury 
complained of arises out of or relates to the negligence (whether active, 
passive or otherwise) of, or was caused in part by, [Delta].
   
1.     The 
express negligence test.
        The 
majority acknowledges that indemnity agreements similar to this one have been 
held to satisfy the express negligence test of Ethyl so as to require 
indemnification for the indemnitee’s own negligence. But the majority 
nevertheless states that “nowhere is there language that directly or 
indirectly says that ARC will indemnify Delta if Delta is solely at 
fault.”  To the contrary, I believe the second sentence says exactly 
that: ARC will indemnify Delta regardless of whether the injury or damage “. . 
. arises out of . . . the negligence . . . of . . . [Delta].”
        In 
many cases, including those cited by the majority, provisions very similar to 
the indemnity agreement here have been held to meet the express negligence test 
so as to require indemnity for the indemnitee’s sole negligence.  The 
second sentence of the indemnity agreement here is comparable to the language in 
those cases.  I would hold that it meets the express negligence test so as 
to obligate ARC to indemnify Delta for claims resulting solely from Delta’s 
own negligence.
   

2.     To What Extent Must ARC Indemnify 
Delta for Delta’s Own Negligence?
 
        The 
majority writes that ARC is never obligated to indemnify Delta for claims that 
arise solely from Delta’s own negligence. The majority derives this 
conclusion from its observation that if Delta is solely at fault, then ARC 
cannot be at fault. This is true (though irrelevant to the indemnity question). 
The majority then reasons that if Delta is solely at fault for a claim, then the 
claim could not arise from any act or omission of ARC. I respectfully 
disagree. The majority adds two words to the indemnity agreement: “solely” 
and “fault.” Nothing in the agreement says ARC must be at fault—solely or 
partially—before its indemnity obligation applies. So long as the claim arises 
from ARC’s act or omission—negligent or otherwise—ARC must indemnify 
Delta, even if Delta is wholly or partially at fault.[3]


        3.     Under 
What Circumstances Must ARC Indemnify Delta for Delta’s Own Negligence?
 
        The 
first sentence of the indemnity agreement states that ARC will indemnify Delta 
for claims that “in any way arise out of or result from the act(s) or 
omissions(s) by [ARC] . . . in the performance or nonperformance of services 
under this Agreement.” The majority assumes that this language limits ARC’s 
indemnity obligation only to claims arising out of ARC’s negligent acts 
or omissions, but no such limitation is expressed in the agreement. The words 
“acts or omissions” do not necessarily connote negligence and have not been 
interpreted in the manner suggested by the majority.[4]  
Similar language exists in most indemnity agreements, as discussed in the cases 
cited by the majority. In other words, a claim could arise out of ARC’s 
non-negligent act or omission.
        Likewise, 
“arising out of” is not synonymous with “caused by.” “‘Arising out 
of’ are words of much broader significance than ‘caused by.’” Utica 
Nat’l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 203 (Tex. 2004) 
(citing Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co., 
189 F.2d 374, 378 (5th Cir. 1951)). “Arising out of” means there is simply a 
causal connection or relationship and implies “but for” causation, but not 
necessarily direct or proximate causation. Id.
        I 
can easily imagine a claim arising out of ARC’s non-negligent 
performance of contract services but solely caused by Delta’s 
negligence. Under the majority’s interpretation of the agreement, such a claim 
does not trigger ARC’s indemnity obligation. But the plain language of the 
indemnity provision compels the opposite conclusion: ARC must indemnify Delta 
for all claims arising from ARC’s acts under the contract, even if 
Delta’s negligence caused the injury.
        The 
first sentence simply imposes a basic requirement of a nexus between the 
injuries or damage and the contract; that is, ARC’s contractual indemnity 
obligation is only triggered as to claims arising out of acts or omissions by 
ARC in the performance or nonperformance of services under its contract with 
Delta. See Coastal Mart, Inc. v. S.W. Bell Tel. Co., 154 S.W.3d 839, 
845-46 (Tex. App.—Corpus Christi 2005, no pet. h.) (holding plain meaning of 
“arising from or connected with” is to require indemnitee to establish 
“some nexus between [indemnitor’s] obligations under the contract and the 
detriment for which indemnity is sought”).
        The 
majority nonetheless reaches the right result. While I would hold that the 
agreement, itself, passes the express negligence test, ARC’s indemnity 
obligation would still only be triggered by allegations in the underlying suit 
that the claimed injuries arose out of performance or nonperformance of ARC’s 
services under the contract.[5]  Because those 
pleadings were only in the alternative as to whether ARC’s or Delta’s 
employees were involved and any claim that ARC’s employees were performing 
services under the contract was abandoned, ARC’s indemnity obligation was not 
triggered as a matter of law.[6]  Therefore, I 
join the majority in affirming the summary judgment.
   
                                                          ANNE 
GARDNER
                                                          JUSTICE
 
 
DELIVERED: April 28, 2005
 

 
NOTES
 
* Majority Opinion by Justice 
McCoy; Concurring Opinion by Justice Gardner
        MAJORITY OPINION NOTES
1. 
In addition, Delta originally argued that the trial court erred in failing to 
grant its motion for summary judgment, but this issue has been withdrawn.
2. 
In light of our holding with regard to these issues, we need not address 
Delta’s remaining arguments. See Tex. 
R. App. P. 47.1.

        CONCURRING OPINION NOTES
3. 
The majority also assumes that ARC’s indemnity obligation only exists where 
Delta is sued for ARC’s negligent acts or omissions.  Neither the 
language of the agreement nor the case law supports such a limitation of ARC’s 
indemnity obligation to Delta’s vicarious liability.
4. 
In Jobs Bldg. Servs., Inc. v. Rom, Inc., an indemnity agreement was held 
not sufficiently specific to require indemnity for the contractor’s own 
negligence that provided for indemnification of the contractor for “damage . . 
. caused by . . . the negligent act or omission of anyone . . . for whose 
acts [or omissions] the contractor . . . may be liable.” 846 
S.W.2d 867, 870 (Tex. App.—Houston [1st Dist.] 1992, writ denied) 
(emphasis added). If the indemnity agreement here had contained similar 
language, then I would agree with the majority’s interpretation.
5. 
If the indemnity agreement were enforceable as to the claim pleaded against 
Delta for its own negligence, it would likewise be enforceable as to defense 
costs and expenses incurred in defending against the pleaded claim, even though 
Delta was found not negligent.  See Fisk Elec. Co. v. 
Constructors & Assocs., Inc., 888 S.W.2d 813, 815 (Tex. 1994).
6. 
See Banner Sign & Barricade, Inc. v. Price Constr., Inc., 94 
S.W.3d 692, 697 (Tex. App.—San Antonio 2002, pet. denied) (holding issue was 
one of law determined solely by allegations in underlying suit that injuries 
arose out of subcontractor’s work).