**DELTA AIR LINES, INC., Appellant,**

v.

**ARC SECURITY, INC., Appellee.**

**No. 2–03–371–CV.**

Court of Appeals of Texas,
Fort Worth.

April 28, 2005.

---

Maloney, Bean, Horn & Hull, P.C., and Dan K. Horn, Irving, TX, for Appellant.

Rose Walker, L.L.P., Leane Capps Medford, Michael D. Richardson, and Steven D. Sanfelippo, Dallas, TX, for Appellee.

PANEL B: LIVINGSTON, GARDNER, and McCOY, JJ.

## OPINION

BOB McCOY, Justice.

### I.  Introduction

This is a suit involving the interpretation of an indemnity agreement.  In four issues, Delta Airlines, Inc. ("Delta") complains that the trial court erred in granting summary judgment for ARC Security, Inc. ("ARC"),[1] and against Delta on its contractual indemnity claims.  We affirm.

### II.  Factual and Procedural Background

On July 15, 1995, Randy Dalton ("Dalton"), a paraplegic, arrived at the Dallas Fort Worth International Airport on Delta flight 1935.  A male and a female attendant, alleged to possibly be ARC employees, moved him from his airplane seat onto an aisle chair, a type of wheelchair specifically designed to roll down the narrow aisle of an aircraft.  Once they were on the jetway adjacent to the airplane, a second male attendant also arrived, purportedly a Delta gate agent, and while Dalton was being transferred from his aisle chair into his wheelchair, he was allegedly dropped on the wheel of the wheelchair and injured.

Delta and ARC were contractually bound by an Agreement for Skycap Services (the "Agreement"), whereby ARC would provide certain defined services for Delta at the airport, including wheelchair assistance to Delta passengers.  ARC's wheelchair assignment sheet indicated that "John F." and possibly "Aftab" were assigned to assist someone that day on flight 1935;  however, the assignment sheet did not identify the particular individual to be assisted.  On occasion, Delta also used its own employees to perform these services.

---

1.  In addition, Delta originally argued that the trial court erred in failing to grant its motion for summary judgment, but this issue has been withdrawn.

As a result of the alleged incident, Dalton sued Delta, ARC, and two of ARC's employees, John Frimpong and Aftab Munir, as well as John Doe 1, John Doe 2, and Jane Doe. In his Third Amended Petition, Dalton asserted that "[o]ne of the two attendants who boarded the aircraft [and dropped Dalton during the wheelchair transfer on the jetway] is believed to be either [d]efendant AFTAB MUNIR or [d]efendant JOHN FRIMPONG.... In the event neither FRIMPONG nor AFTAB is the male attendant in question, then JOHN DOE 1 and JANE DOE were the attendants in question." As to Delta and ARC, Dalton alleged (1) negligence related to the wheelchair transfer, (2) breach of an implied warranty to Dalton that he would be transported in a reasonably safe manner, (3) responsibility for the negligent acts of their respective agents and employees, and (4) gross negligence. In its First Amended Answer and Cross–Claim for Contractual Indemnity, Delta pled a general denial and other defenses, and sought indemnity from ARC under the Agreement for any costs or expenses that Delta might be required to pay as a result of the suit.

Before trial, Dalton nonsuited his claims against ARC after evidence revealed that the appearance of ARC's employees differed from Dalton's description of the persons involved in the incident. Delta's indemnity claim against ARC was also severed from Dalton's claims against Delta. Following a jury trial, the trial court rendered a take-nothing judgment in favor of Delta and against Dalton. Thereafter in the indemnity suit, Delta pursued its expenses connected with defending itself against Dalton's claims. ARC filed both a traditional motion and a no-evidence motion for summary judgment asserting the following grounds:

1. Delta is only entitled to contractual indemnity in the event an "act" or "omission" by ARC contributed to the alleged injuries Mr. Dalton claims he sustained during a wheelchair transfer incident. Delta has judicially admitted the incident never occurred, and no evidence exists to suggest ARC was in any way involved. Delta is therefore estopped from seeking indemnity from ARC as a matter of law.

2. The express negligence doctrine adopted by Texas and Georgia requires parties seeking indemnity for their own negligence to clearly and conspicuously state that intention. The indemnity provision Delta now relies on requires the occurrence of an "act" or "omission" by ARC and does not specifically state ARC will indemnify Delta for Delta's sole negligence. In the absence of a clear intent to indemnify Delta for Delta's own negligence, the provision is unenforceable as a matter of law.

3. Delta has provided no evidence that ARC committed an "act" or "omission" sufficient to warrant application of the indemnity agreement between the parties. ARC is therefore entitled to a "no-evidence" summary judgment.

Likewise, Delta filed a cross-motion for summary judgment and articulated as grounds therefor that "the summary judgment evidence conclusively establishes ARC's liability under the terms of the written agreement." Thereafter, the trial court denied Delta's motion for summary judgment and granted ARC's motion for summary judgment that Delta take nothing on its indemnity claim. The trial court did not specify the reasons for its rulings. This appeal by Delta followed.

In what it denominates as four issues, Delta argues that (1) the trial court erred in granting summary judgment to ARC, (2) because Delta raised a fact issue as to whether the claim against Delta arose

from an act or omission of ARC, (3) because the Agreement's indemnity provision met the express negligence test so that ARC should indemnify Delta for Delta's sole acts or omissions, and (4) because Delta was not barred by judicial admission or judicial estoppel from asserting that the underlying claim arose from an act or omission of ARC under the Agreement.

## III. The Allegations and the Indemnity Agreement

### A. Plaintiff's Pleadings

In its second issue, Delta posits its issue as "Did Delta present some evidence to establish that the claim against Delta arose in any way from any act or omission by ARC under the contract?" An examination of Plaintiff's Third Amended Petition reveals that Dalton was unsure whose employees allegedly dropped him during the wheelchair transfer. As a result, he sued Delta in the event the individuals were Delta's employees and ARC in the event the individuals were ARC's employees; that is, Delta was sued solely for its alleged acts and omissions, and ARC was sued only for its alleged acts and omissions.

We first examine the Agreement to determine whether ARC agreed to indemnify Delta for ARC's acts or omissions for which Delta was sued. Paragraph eight of the Agreement, titled "Indemnification," states in pertinent part as follows:

> Contractor [ARC] shall indemnify, defend and hold harmless Delta ... from and against any and all claims ... of any kind or nature whatsoever, including, but not limited to, interest, court costs and attorneys fees, which in any way arise out of or result from any act(s) or omission(s) by Contractor ... in the performance or non performance of services under this Agreement.... This section shall apply regardless of

whether or not the damage, loss or injury complained of arises out of or relates to the negligence ... of, or was caused in part by, a party indemnified hereunder. However, nothing contained in this section shall be construed as an indemnity by Contractor against any loss, liability or claim arising solely from the gross negligence or willful misconduct of Delta.

In short form, the first sentence of the indemnification paragraph says that ARC will indemnify Delta against all claims against Delta *that arise out of acts or omissions of ARC under the Agreement.* However, Delta was not alleged to be responsible for the acts or omissions of ARC but rather for its own acts or omissions. Even so, if Delta could prove that, regardless of the pleadings, the act or omission that Dalton alleged was caused by Delta employees was actually caused by ARC employees, then Delta would be entitled to indemnification under the Agreement.

### B. Choice of Law

Delta points out that paragraph 13 of the Agreement indicates that the provisions of the contract are to be construed under Georgia law. ARC asserts that Texas courts will apply Texas law in the interpretation of contractual language unless Delta establishes that there is a conflict between Texas and Georgia law on the disputed issue. *See Fraud–Tech, Inc. v. Choicepoint, Inc.,* 102 S.W.3d 366, 377 (Tex.App.-Fort Worth 2003, pet. denied). After analyzing a Georgia case that it asserts is "on point" to our discussion of the indemnity language in the Agreement, Delta takes the position that "even if Texas law should be applied, the result would be the same." Therefore, we will analyze the Agreement under Texas law.

### C. Standards of Review for Traditional and No–Evidence Motions for Summary Judgment

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000). The reviewing court should render the judgment that the trial court should have rendered. *Id.*

Texas Rule of Civil Procedure 166a does not prohibit a party from combining in a single motion a request for a traditional summary judgment with a request for a no-evidence summary judgment that asserts that there is "no evidence of one or more essential elements of a claim or defense." *Binur v. Jacobo,* 135 S.W.3d 646, 650 (Tex.2004).

A defendant is entitled to a "traditional" summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 803 (Tex.1999). The defendant as movant must present summary judgment evidence that negates an element of the plaintiff's claim. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. *Id.*

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, also move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. TEX.R. CIV. P. 166a(i). The "no-evidence" motion for summary judgment must specifically state the elements for

which there is no evidence. *Id.; Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 207 (Tex.2002). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* TEX.R. CIV. P. 166a(i) & cmt.; *S.W. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002). We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004); *Johnson,* 73 S.W.3d at 197; *Morgan v. Anthony,* 27 S.W.3d 928, 929 (Tex.2000). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied).

Less than a scintilla of evidence exists when the evidence is so weak that it does nothing more than create a mere surmise or suspicion of a fact. *Kindred v. Con/ Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004); *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997), *cert. denied,* 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). A genuine issue of material fact is raised by presenting evidence on which a reasonable jury could return a verdict in the nonmovant's favor. *Moore,* 981 S.W.2d at 266; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–56, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (interpreting FED.R.CIV.P. 56).

**D. Application to the Evidence**

■ If the trial court granted ARC's summary judgment because it concluded that Delta had presented insufficient evidence that it was sued due to the acts or omissions of ARC, Delta asserts that summary judgment was improper because it presented more than a scintilla of evidence that it had been sued because of ARC's actions through the evidence contained in the "Wheelchair Assignment Sheet," wherein Delta asserts that ARC assigned "John F" and "Aftab" to "assist Mr. Dalton on the date in question." This, however, is not what the Wheelchair Assignment Sheet states. It is evidence that John F., and possibly Aftab, were assigned to meet flight 1935. There is no evidence that they were assigned to meet Mr. Dalton. The second piece of evidence urged by Delta is deposition testimony that it was the normal procedure for ARC to assign its employees to assist wheelchair passengers. This is, of course, just recounting ARC's responsibilities under the Agreement wherein they agreed to provide "electric cart and wheelchair assistance to Delta's customers . . . ."

Regardless of whether this evidence, standing alone, is more than a scintilla of evidence that ARC employees were involved in the particular wheelchair incident with Dalton, understanding that Delta employees also provided this service, ARC conclusively established through its own evidence and the testimony of Dalton that its employees were not involved. In Dalton's disposition, he testified that the non-Delta individuals involved in transferring him from the aisle chair to the wheelchair were a male and female who were wearing "dark, kind of a navy blue overall-looking outfits ... like what ... a mechanic or something would wear ... thicker, blue-dark blue coveralls." ARC's employees were dressed in dress shirts, ties, and slacks. Neither John Frimbrough nor Aftab Munir testified that they had any recollection of ever having assisted Dalton, and Dalton did not identify either of their photographs as being the male who assisted him into the aisle chair. Dalton further testified that the male that assisted him was caucasian, but neither John Frimbrough nor Aftab Munir are caucasian. Therefore, we conclude that ARC conclusively established that the individuals who allegedly dropped Dalton during the wheelchair transfer were not employees of ARC, and therefore, Delta could not have been sued for the actions of ARC. We overrule Delta's issue number two.

### E. The Express Negligence Test

■ In its third issue, Delta contends that it raised a material fact issue on its indemnity claim because the indemnity provision in the Agreement satisfied the express negligence test, i.e., ARC agreed to indemnify Delta for Delta's own negligence. The genesis of the express negligence doctrine is *Ethyl Corp. v. Daniel Construction Co.*, 725 S.W.2d 705, 708 (Tex.1987), wherein the court stated that

> [t]he express negligence doctrine provides that parties seeking to indemnify the indemnitee from the consequences of its own negligence must express that intent in specific terms. Under the doctrine of express negligence, the intent of the parties must be specifically stated within the four corners of the contract.

In *Adams Resources Exploration Corp. v. Resource Drilling, Inc.*, 761 S.W.2d 63, 65 (Tex.App.-Houston [14th Dist.] 1988, no writ), the court noted that in the express negligence context, an enforceable indemnity clause must contain three elements: "(1) [t]he intent of the parties must be clear; (2) it must be set forth within the four corners of the agreement; and (3) the specific intent of the parties must be expressed." *Id.*

In its reply brief, Delta cites cases for the proposition that the indemnification language in the Agreement meets the requirements of express negligence. In *Maxus Exploration Co. v. Moran Brothers, Inc.,* 817 S.W.2d 50, 58 (Tex.1991), Diamond Shamrock agreed to indemnify Moran against claims by Diamond Shamrock's employees *"without limit or without regard to* the cause or causes thereof or *the negligence of any party or parties."* *Id.* (emphasis supplied). There was a corresponding reciprocal agreement by Moran. The court went on to hold that "the agreement unmistakably obligated Diamond Shamrock and Moran to indemnify one another for the other's own negligence." *Id.* As to Diamond Shamrock, this is clear from a reading of the previously quoted section of the agreement, i.e., Diamond Shamrock agreed to indemnify Moran regardless of the cause of the negligence of any of the parties; that cause obviously could include Moran itself.

In *Adams,* the court held that the following language satisfies the express negligence test: "Contractor agrees to protect, defend, and indemnify, and save operator ... from and against all claims, demands, and causes of action ... *without regard* to the cause or causes thereof or *the negligence of any party or parties.* ..." *Adams Resources Exploration Corp.,* 761 S.W.2d at 64 (emphasis supplied). Again, intent to indemnify the operator from its own negligence is obvious because the language "without regard to the cause or causes thereof or the negligence of any party or parties" could include the negligence of the operator.

Not discussed by the parties, but pertinent to this issue, is *B–F–W Construction Co. v. Garza,* 748 S.W.2d 611, 613 (Tex. App.-Fort Worth 1988, no writ), in which this court held that the following language also meets the test: "Subcontractor shall fully protect, indemnify, and defend contractor ... against any ... causes of action ... *regardless of cause or of any fault or negligence* of contractor." *Id.* at 613 (emphasis supplied). We stated that this language meets "the express negligence test because it expressly states the intent of the parties that the subcontractor would indemnify the contractor for the contractor's own negligence." *Id.*

### F. Application of the Express Negligence Test

Delta asserts that the language in the second sentence of the indemnification paragraph that states, "This section shall apply regardless of whether or not the damage, loss, or injury ... arises out of ... the negligence ... of, or was caused in part by, a party indemnified hereunder," meets the express negligence doctrine requirements. However, that language is limited by the contractual language of the first sentence of paragraph eight. The first sentence defines the indemnity obligation, and the second sentence defines its parameters. In short form, the first sentence of the indemnification paragraph says that ARC will indemnify Delta against all claims against Delta *that arise out of acts or omissions of ARC under the Agreement.*

The second sentence says that this indemnification by ARC will be applicable notwithstanding the negligence of a party indemnified under it, which is Delta. In other words, ARC's obligation to indemnify Delta *if Delta is sued for ARC's acts or omissions* exists even if Delta is also negligent, or the loss was "caused in part by" Delta. However, nowhere is there language that directly or indirectly says that ARC will indemnify Delta if Delta is solely at fault, because if Delta is solely at fault, then ARC cannot be at fault and Delta could not be sued for ARC's acts or omissions as required for indemnification in the

first sentence. In other words, ARC will indemnify Delta if Delta is sued for ARC's acts or omissions (the obligation found in the first sentence) even if Delta is also partially at fault (the parameter of the obligation found in the second sentence). If Delta is wholly at fault, however, ARC's acts and omissions do not give rise to a claim against Delta, and no indemnification is required.

As applied to paragraph eight of the Agreement and Plaintiff's Third Amended Petition, ARC was not required to indemnify Delta for Delta's own acts or omissions because this obligation arose only if Delta had been sued for ARC's acts or omissions, which it was not. Accordingly, Delta's third issue is overruled.

## IV. Plaintiff's Claims

In its first issue, Delta asserts error by the trial court in "granting summary judgment in favor of ARC." Having overruled Delta's issues two and three that are dispositive of issue one, we overrule that issue also.

## V. Conclusion

Having overruled Delta's first, second, and third issues, it is unnecessary to address issue four, and we affirm the trial court's judgment.[2]

GARDNER, J. filed a concurring opinion.

ANNE GARDNER, Justice, concurring.

I agree with the majority's result. But I respectfully disagree with its interpretation of the indemnity agreement. The majority adds terms that do not exist on the face of the agreement, that are unnecessary to resolve this appeal, and that could

result in unintended consequences beyond the facts of this case.

To resolve this appeal, we must answer three questions: First, does the indemnity agreement pass the "express negligence" test; that is, is ARC *ever* obligated to indemnify Delta for Delta's own negligence? Second, *to what extent* is ARC obligated to indemnify Delta for Delta's own negligence? And third, do the facts presented trigger ARC's contractual obligation to indemnify Delta? To answer these questions, I first look to the plain language of the indemnity agreement. The indemnity agreement consists of two sentences:

> [ARC] shall indemnify ... Delta ... from ... all claims ... which in any way arise out of or result from any act(s) or omission(s) by [ARC] ... in the performance or nonperformance of services under this Agreement. . . .

> This section shall apply regardless of whether or not the damage, loss or injury complained of arises out of or relates to the negligence (whether active, passive or otherwise) of, or was caused in part by, [Delta].

### 1. The express negligence test.

The majority acknowledges that indemnity agreements similar to this one have been held to satisfy the express negligence test of *Ethyl* so as to require indemnification for the indemnitee's own negligence. But the majority nevertheless states that "nowhere is there language that directly or indirectly says that ARC will indemnify Delta if Delta is solely at fault." To the contrary, I believe the second sentence says exactly that: ARC will indemnify Delta regardless of whether the injury or

---

**2.** In light of our holding with regard to these issues, we need not address Delta's remaining

arguments. *See* TEX.R.APP. P. 47.1.

damage "... arises out of ... the negligence ... of ... [Delta]."

In many cases, including those cited by the majority, provisions very similar to the indemnity agreement here have been held to meet the express negligence test so as to require indemnity for the indemnitee's sole negligence. The second sentence of the indemnity agreement here is comparable to the language in those cases. I would hold that it meets the express negligence test so as to obligate ARC to indemnify Delta for claims resulting solely from Delta's own negligence.

## 2. To What Extent Must ARC Indemnify Delta for Delta's Own Negligence?

The majority writes that ARC is never obligated to indemnify Delta for claims that arise *solely* from Delta's own negligence. The majority derives this conclusion from its observation that if Delta is solely at fault, then ARC cannot be at fault. This is true (though irrelevant to the indemnity question). The majority then reasons that if Delta is solely at fault for a claim, then the claim could not arise from any *act or omission* of ARC. I respectfully disagree. The majority adds two words to the indemnity agreement: "solely" and "fault." Nothing in the agreement says ARC must be at fault—solely or partially—before its indemnity obligation applies. So long as the claim arises from ARC's act or omission—negligent or oth-

erwise—ARC must indemnify Delta, even if Delta is wholly or partially at fault.[1]

## 3. Under What Circumstances Must ARC Indemnify Delta for Delta's Own Negligence?

The first sentence of the indemnity agreement states that ARC will indemnify Delta for claims that "in any way arise out of or result from the act(s) or omissions(s) by [ARC] ... in the performance or nonperformance of services under this Agreement." The majority assumes that this language limits ARC's indemnity obligation only to claims arising out of ARC's *negligent* acts or omissions, but no such limitation is expressed in the agreement. The words "acts or omissions" do not necessarily connote negligence and have not been interpreted in the manner suggested by the majority.[2] Similar language exists in most indemnity agreements, as discussed in the cases cited by the majority. In other words, a claim could arise out of ARC's non-negligent act or omission.

Likewise, "arising out of" is not synonymous with "caused by." " 'Arising out of' are words of much broader significance than 'caused by.'" *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex.2004) (citing *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir.1951)). "Arising out of" means there is simply a causal connection or relationship and implies "but for" causation, but not necessarily direct or proximate causation. *Id.*

---

1. The majority also assumes that ARC's indemnity obligation only exists where Delta is sued for ARC's negligent acts or omissions. Neither the language of the agreement nor the case law supports such a limitation of ARC's indemnity obligation to Delta's vicarious liability.

2. In *Jobs Bldg. Servs., Inc. v. Rom, Inc.*, an indemnity agreement was held not sufficiently specific to require indemnity for the contrac-

tor's own negligence that provided for indemnification of the contractor for "damage ... caused by ... the negligent act or omission of anyone ... *for whose acts [or omissions] the contractor ... may be liable.*" 846 S.W.2d 867, 870 (Tex.App.-Houston [1st Dist.] 1992, writ denied) (emphasis added). If the indemnity agreement here had contained similar language, then I would agree with the majority's interpretation.

I can easily imagine a claim *arising out of* ARC's non-negligent performance of contract services but solely *caused by* Delta's negligence. Under the majority's interpretation of the agreement, such a claim does not trigger ARC's indemnity obligation. But the plain language of the indemnity provision compels the opposite conclusion: ARC must indemnify Delta for all claims arising from ARC's *acts* under the contract, even if Delta's *negligence* caused the injury.

The first sentence simply imposes a basic requirement of a nexus between the injuries or damage and the contract; that is, ARC's contractual indemnity obligation is only triggered as to claims arising out of acts or omissions by ARC in the performance or nonperformance of services under its contract with Delta. *See Coastal Mart, Inc. v. S.W. Bell Tel. Co.*, 154 S.W.3d 839, 845–46 (Tex.App.-Corpus Christi 2005, no pet. h.) (holding plain meaning of "arising from or connected with" is to require indemnitee to establish "some nexus between [indemnitor's] obligations under the contract and the detriment for which indemnity is sought").

The majority nonetheless reaches the right result. While I would hold that the agreement, itself, passes the express negligence test, ARC's indemnity obligation would still only be triggered by allegations in the underlying suit that the claimed injuries arose out of performance or nonperformance of ARC's services under the contract.[3] Because those pleadings were only in the alternative as to whether ARC's or Delta's employees were involved and any claim that ARC's employees were performing services under the contract was abandoned, ARC's indemnity obligation was not triggered as a matter of law.[4] Therefore, I join the majority in affirming the summary judgment.

---

3. If the indemnity agreement were enforceable as to the claim pleaded against Delta for its own negligence, it would likewise be enforceable as to defense costs and expenses incurred in defending against the pleaded claim, even though Delta was found not negligent. *See Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 815 (Tex.1994).

4. *See Banner Sign & Barricade, Inc. v. Price Constr., Inc.*, 94 S.W.3d 692, 697 (Tex.App.-San Antonio 2002, pet. denied) (holding issue was one of law determined solely by allegations in underlying suit that injuries arose out of subcontractor's work).