CABO CONSTRUCTION, INC., Appellant,

v.

R S CLARK CONSTRUCTION, INC. and Randalls Food Markets, Inc., Appellees.

No. 01–05–00487–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 12, 2007.

Noel Anne Lewandos, Law Office of Terry Grewing, Houston, TX, for Cabo Construction, Inc.

Lynda Kae Stewart, Johanson & Fairless, L.L.P., Sugar Land, TX, for R S Clark Construction, Inc. and Randalls Food Markets, Inc.

Panel consists of Justices NUCHIA, KEYES, and HIGLEY.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Cabo Construction, Inc. appeals the trial court's order granting summary judgment in favor of appellees, R S Clark Construction, Inc. ("Clark") and Randalls Food Markets, Inc. ("Randalls"). In four issues on appeal, Cabo argues that (1) the trial court improperly relied on pleadings in granting summary judgment; (2) the indemnity agreement did not satisfy the express negligence test; and (3)

because the indemnity agreement does not pass the express negligence test, Cabo should not have to pay legal fees and expenses incurred by Clark and Randalls.

We reverse and remand.

### Background

On September 10, 2001, Annie Hopkins, a customer in a Randalls grocery store that had been undergoing remodeling, sustained an injury after slipping and falling in the store. Hopkins brought suit for negligence against Randalls and Clark, the general contractor for the remodeling job.

At the time of the remodeling, Clark and Randalls had entered into an agreement with Cabo for Cabo to serve as a subcontractor (the "Clark–Cabo agreement"). After Hopkins sued them, Clark and Randalls brought a third-party petition against Cabo seeking contribution and/or complete indemnity for the claims alleged by Hopkins. Clark and Randalls denied their own negligence and pled that Cabo "is believed to have been the company that dug a trench in the Randalls store in question which is the trench that is the subject of this lawsuit."

Clark and Randalls filed a joint motion for summary judgment seeking to enforce the indemnity provision in the Clark–Cabo agreement. They relied on paragraph 4.6 of the agreement,[1] which provided:

**4.6   INDEMNIFICATION**

4.6.1   To the fullest extent permitted by law, *the Subcontractor [Cabo] shall indemnify and hold harmless the Owner [Randalls], Contractor [Clark], Architect, Architect's consultants, and agents and employees of any of them from and against claims, damages,* *losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's [Cabo's] Work* under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), *but only to the extent caused by the negligent acts or omissions of the Subcontractor [Cabo], the Subcontractor's Subsubcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.* Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Paragraph 4.6.

(Emphasis added.) Cabo responded that the indemnity provision was unenforceable because it did not pass the express negligence test. The trial court granted the motion for summary judgment without stating its reasons. The trial court later severed the indemnity claim against Cabo. Cabo filed a motion for new trial, which was denied.

### Standard of Review

Summary judgment is a question of law. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 220 (Tex.2003).

---

**1.** The agreement is a "Standard Form of Agreement Between Contractor and Subcontractor" entitled AIA Document A401–1997.

Thus, we review a trial court's summary judgment decision de novo. *Id.* The standard of review for a traditional summary judgment motion is threefold: (1) the movant must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. TEX.R. CIV. P. 166a(c); *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645–46 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). A defendant seeking summary judgment must, as a matter of law, negate at least one element of each of the plaintiff's theories of recovery or plead and prove each element of an affirmative defense. *See Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995).

If the trial court has granted summary judgment without specifying the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced is meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

### Indemnity

In its first issue on appeal, Cabo argues that the indemnity provision does not expressly indemnify Clark and Randalls for their own negligence and thus does not pass the express negligence test required for validity.

■ Because indemnity provisions seek to shift the risk of one party's future negligence to the other party, Texas imposes a fair notice requirement before enforcing such agreements. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993). The fair notice requirements are the express negligence doctrine and the conspicuousness requirement. *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex.2004). Under the express negligence doctrine, an intent to indemnify one of the parties from the consequences of its own negligence, "must be specifically stated in the four corners of the document." *Id.* (quoting *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707 (Tex.1987)). The conspicuousness requirement mandates that "something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Id.* (quoting *Dresser*, 853 S.W.2d at 508). Language is conspicuous if it appears in larger type, contrasting colors, or otherwise calls attention to itself. *Dresser*, 853 S.W.2d at 511; *see also* TEX. BUS. & COM. CODE ANN. § 1.201(b)(10) (Vernon Supp. 2006). Whether an agreement meets the conspicuous requirement is a question of law for the court. *Dresser*, 853 S.W.2d at 509. An agreement that does not "satisfy either of the fair notice requirements when they are imposed is unenforceable as a matter of law." *Reyes*, 134 S.W.3d at 192. "However, if both contracting parties have actual knowledge of the plan's terms, an agreement can be enforced even if the fair notice requirements were not satisfied." *Id.*

■ Here, the indemnity provision expressly states that Cabo will indemnify Clark and Randalls for claims arising from *Cabo's* negligence, but it does not expressly state that Cabo will indemnify Clark and Randalls for claims arising from their own negligence. Nevertheless, Clark and Randalls rely on the language toward the end of the indemnity provision to show that Cabo must indemnify them for their negligence. Specifically, they rely on the proviso which states that Cabo will indem-

nify Clark and Randalls for *Cabo's* negligence,

> but only to the extent caused by the negligent acts or omissions of the Subcontractor [Cabo], the Subcontractor's Sub-subcontractors, anyone directly or indirectly employed by them *or anyone for whose acts they may be liable,* regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.

Because the language Clark and Randalls rely on is unclear as to who is indemnified and for what, the indemnity provision is ambiguous. Ambiguous indemnity provisions are unenforceable. *See Ethyl,* 725 S.W.2d at 707–08; *Monsanto Co. v. Owens–Corning Fiberglas Corp.,* 764 S.W.2d 293, 296 (Tex.App.-Houston [1st Dist.] 1988, no writ).

The controlling case is *Ethyl Corp. v. Daniel Const. Co.,* which adopted the express negligence test. 725 S.W.2d 705, 708 (Tex.1987). In *Ethyl,* an employee of a contractor, Daniel, brought a third-party personal injury claim against the owner, Ethyl. *Id.* at 706–07. The contract between Ethyl and Daniel provided,

> Contractor [Daniel] shall indemnify and hold Owner [Ethyl] harmless against any loss or damage to persons or property as a result of operations growing out of the performance of this contract and *caused by the negligence or carelessness of [Daniel],* [Daniel's] employees, Subcontractors, and agents or licensees.

*Id.* at 707 (emphasis added). The issue, as here, was whether the contract indemnified Ethyl for its own negligence. The supreme court held that it did not under the express negligence doctrine, which "provides that parties seeking to indemnify the indemnitee from consequences of its own negligence must express that intent in specific terms." *Id.* at 708. The contract

did not expressly indemnify Ethyl for its own negligence; nor did it entitle Ethyl to comparative indemnity to the extent of Daniel's negligence, which the jury found to be 10%, because it did not contain a comparative negligence provision. *Id.* The court opined that parties could have contracted for comparative indemnity, but "[i]ndemnitees seeking indemnity for the consequences of their own negligence which proximately causes injury jointly and concurrently with the indemnitor's negligence must also meet the express negligence test." *Id.* at 708–09. Here, as in *Ethyl,* the express-negligence rule is not met.

We note that the Dallas Court of Appeals has held that language nearly identical to the indemnity provision in this case failed to meet the requirements of the express negligence doctrine. *See Adams v. Spring Valley Constr. Co.,* 728 S.W.2d 412, 414 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). In *Adams,* the court of appeals reviewed an indemnity agreement contained in a certificate of insurance. The indemnity agreement provided,

> The Subcontractor shall indemnify and hold harmless the contractor ... against all claims, damages, losses and expenses, including attorney's fees, arising out of or resulting from the performance of the Subcontractor's Work under the Contract Documents, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, ... and (b) is *caused in whole or in part by [a] negligent act or omission of the Subcontractor or anyone* directly or indirectly employed by him or anyone *for whose acts he may be liable,* regardless of whether it is caused in part by a party indemnified hereunder....

*Id.* at 413. The Dallas court of Appeals held that this paragraph did not expressly

state that the contractor was to be indemnified for its own negligence. *Id.* at 414.

Clark, however, relies on three opinions to show that the indemnity provision is enforceable. *See Enserch Corp. v. Parker,* 794 S.W.2d 2 (Tex.1990); *Ard v. Gemini Exploration Co.,* 894 S.W.2d 11 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *Maxus Exploration Co. v. Moran Bros. Inc.,* 817 S.W.2d 50 (Tex.1991). All three cases are distinguishable.

In *Enserch,* the Texas Supreme Court held that an indemnity agreement passed the express negligence test because the language in the indemnity agreement sufficiently defined the parties' intent that Christie (the contractor) would indemnify Enserch (the owner) for the consequences of Enserch's own negligence. *See Enserch,* 794 S.W.2d at 8. The contract stated,

> [Christie] assumes entire responsibility and liability for any claim or actions based on or arising out of injuries, including death, to persons ... *alleged to have been sustained in connection with* or to have arisen out of or incidental *to the performance of this contract by [Christie],* its agent and employees, and its subcontractors, their agents and employees, *regardless of whether such claims or actions are founded in whole or in part upon alleged negligence of [Enserch],* [Enserch's] representative, or the employees, agents, invitees, or licensees thereof.

*Id.* at 6–7. The supreme court held that the contract was "sufficient to define the parties' intent that Christie indemnify Enserch for the consequences of Enserch's own negligence." *Id.* at 8. Unlike the Clark–Cabo agreement which does not specifically state that Cabo will indemnify Clark and Randalls for their own negligence, the indemnity language in *Enserch* specifically informed the parties that Christie would indemnify Enserch for negligence, including the negligence of Enserch. We disagree, therefore, with Clark's contention that *Enserch* compels us to hold that the indemnity provision in the instant case is enforceable.

Likewise, in *Ard,* the indemnity agreement stated that

> [s]uch obligation of the contractor to indemnify the Company Indemnified Parties shall be without regard to the cause or causes (including preexisting conditions or conditions of the workplace or equipment provided by the Company) *or the negligence of the Company Indemnified Parties, whether the negligence be active or passive, sole or concurrent, simple or gross, comparative, contractual,* or *any other degree or type of negligence.*

894 S.W.2d at 14. This language expressly states that the indemnity agreement will apply regardless of the cause or causes of the claim or the "negligence of the Company." The language in the *Ard* indemnity agreement, therefore, expressly provides for indemnity for the Company's own negligence. Conversely, the Clark–Cabo agreement does not contain language expressly providing for indemnification for Clark's or Randalls' own negligence.

Finally, *Maxus* is not applicable because it was decided under Kansas law. Moreover, although the Texas Supreme Court stated in Maxus that it "thinks that [the indemnity agreement] meets the requirement of Texas law that the indemnity agreement be express," later in the opinion, the court opined that "[w]e express no opinion on whether the indemnity provisions at issue would be valid under Texas law." 817 S.W.2d at 58. Thus, we disagree with Clark that *Maxus* supports a holding that the Clark–Cabo agreement contains an enforceable indemnity provision.

Accordingly, we hold that the indemnity provision in the Clark–Cabo agreement does not express in specific terms the intent of the parties that Cabo indemnify Clark and Randalls for their own negligence. *See Ethyl,* 725 S.W.2d at 708; *Adams,* 728 S.W.2d at 414. Therefore, we conclude that the indemnity provision is unenforceable. *See Fisk Elec. Co. v. Constructors & Assocs.,* 888 S.W.2d 813, 815 (Tex.1994) ("Either the indemnity agreement is clear and enforceable or it is not."). Because we conclude that the Clark–Cabo agreement does not contain an enforceable indemnity provision between Clark and Randalls on the one hand, and Cabo on the other, we sustain Cabo's second issue on appeal. We need not address Cabo's remaining issues. *See* TEX.R.APP. P. 47.1.

### Conclusion

We reverse the judgment and remand the cause to the trial court for further proceedings consistent with this opinion.